UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HOSEA McGILL, | ) | Case No. 1:16CV3060 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | <u>REPORT AND RECOMMENDATION</u> |

Plaintiff Hosea McGill ("McGill" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

## I. PROCEDURAL HISTORY

On July 24, 2013, McGill filed an application for SSI benefits, alleging disability beginning July 1, 2013. (R. 10, PageID #: 67, 225-228, 238-248.) McGill's application was denied initially and upon reconsideration. (R. 10, PageID #: 145-159, 160, 161-176, 177.)

Thereafter, McGill filed a written request for a hearing before an administrative law judge. (R. 10, PageID #: 190-191.). The ALJ held a hearing on August 10, 2015. (R. 10, PageID #: 83-128.) McGill appeared at the hearing, was represented by counsel, and testified. (*Id.* at 85, 93-113.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 85, 114-127.)

On September 24, 2015, the ALJ issued her decision[1], applying the standard five-step sequential analysis to determine whether McGill was disabled. (R. 10, PageID #: 67-78; *see generally* 20 C.F.R. § 416.920(a).) The ALJ concluded McGill was not disabled. (R. 10, PageID #: 67, 78.) The Appeals Council denied McGill's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 10, PageID #: 57-59.)

McGill now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. McGill presents the following legal issues for the court's review:

> 1. The ALJ failed to properly evaluate Mr. McGill's complaints of disabling symptoms including pain, fatigue and depression.
>
> > A) The ALJ failed to consider Mr. McGill's multiple pain disorders when she evaluated his credibility.
> > B) The ALJ failed to comply with SSR 12-2p when evaluating fibromyalgia.
> > C) The ALJ failed to fully consider the combined impact that Mr. McGill's physical and mental disorders had on his pain.

---

[1] The ALJ noted a previous decision on July 19, 2012, denying McGill's 2011 Title II application for a period of disability and disability insurance benefits. (R. 10, PageID #: 67; *see generally* PageID #: 129-141.) The ALJ determined that *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997) did not apply because the prior application was a Title II application, while the current application is a Title XVI application and the record contained new and material evidence establishing that claimant has additional severe impairments. *Id.* at PageID #: 67.

D) The ALJ's reasons for the credibility finding were not supported by substantial evidence.

2. The ALJ committed legal error in evaluating the treating physician's evidence and her conclusions were not supported by substantial evidence.

A) The ALJ failed to conduct a proper analysis of the first prong of the treating physician rule because she failed to determine whether the treating physicians' opinions were well-supported by medically acceptable clinical and laboratory diagnostic techniques and not otherwise inconsistent with other substantial evidence in the case record.
B) The ALJ failed to provide good reasons for not according controlling weight or even great deference to the opinion of the treating physician.

3. New evidence material to the determination of Mr. McGill's disability requires a remand to properly evaluate the nature and severity of his impairments.

(R. 12, PageID #: 745-746.)

## II. PERSONAL BACKGROUND INFORMATION

McGill was born on August 31, 1961, and was 51 years old on the application date. (R. 10, PageID #: 76, 225, 238.) McGill has a high school education, and is able to communicate in English. (R. 10, PageID #: 77, 243, 241.) McGill had past work as an industrial maintenance repair person. (R. 10, PageID #: 76, 94.)

Disputed issues will be discussed as they arise in McGill's brief alleging error by the

ALJ.  As noted earlier, McGill applied for SSI on July 24, 2013.  (R. 10, PageID #: 67, 225-228,

238-248.)  McGill listed his physical or mental conditions that limit his ability to work as:

"diabetes, rheumatoid arthritis, depression, kidney problems, left knee problems and pain."  (R.

10, PageID #: 242.)

McGill presented for a consultative psychological examination with clinical psychologist

Michael Faust, Ph.D., on October 11, 2013.  (R. 10, PageID #: 358-364.)  McGill reported to Dr.

Faust that he had last been employed as a housekeeper for approximately six to seven months in

2010, but quit because the pain in his legs was too much.  *Id.* at 359.  McGill reported a history

of depression, beginning seven years ago.  *Id.* at 360.  He has not been under the care of a mental

health professional, but his primary care physician prescribed Zoloft for the past 18 months.  *Id.*

He reported difficulties with sleep, a lack of energy, and hopelessness.  *Id.*  McGill attends

church weekly, and a Bible study meeting every Wednesday night.  *Id.* at 362.  Dr. Faust

diagnosed claimant with Major Depressive Order, Recurrent, Moderate.  *Id.*

Dr. Faust assessed that McGill's mental abilities were in the average range, but his ability

to remember instructions may be negatively affected by lapses in attention.  (R. 10, PageID #:

363.)  Dr. Faust noted that McGill displayed some attention problems on mental tasks.  *Id.*  Dr.

Faust indicated, however, that McGill's work pace and persistence were within normal limits at

---

[2]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only
those portions of the record cited by the parties and also deemed relevant by the court to the
assignments of error raised.

the exam, although claimant reported he had difficulty staying on task because of pain, distractibility and low energy. *Id.* The psychologist indicated that McGill was cooperative, but depressed and difficult to engage. *Id.* at 363-364. Dr. Faust opined that McGill may have limitations in his ability to respond to others in the work place because of his depression disorder. *Id.* at 364. Exposure to work pressures may increase his depression and anxiety symptoms, and Dr. Faust opined that McGill did not have adequate coping skills to manage emotional outbursts. *Id.*

McGill presented for a consultative physical examination by internist Dorothy Bradford, M.D., on November 1, 2013. (R. 10, PageID #: 367-374.) Dr. Bradford noted a history of left knee pain since 2001, with constant pain since 2006, arthritis in his shoulder and legs, diabetes controlled by diet, and high cholesterol. *Id.* at 371. The doctor noted that McGill had "arthroscopic surgery twice and injections." *Id.* He sometimes uses a cane for his left knee, but always uses a knee supporter. *Id.* McGill can raise his arms overhead, but cannot sustain them there for long. *Id.* McGill did not provide a current medication list to Dr. Bradford. *Id.*

Dr. Bradford noted normal activity and energy level, no change in appetite or major changes in weight, and no depressive symptoms. (R. 10, PageID #: 371.) The musculoskeletal exam showed no tenderness, a full range of motion, and normal stability, strength and tone in both arms and his right leg. *Id.* at 373. The left leg also had no tenderness, a full range of motion in the hip and ankle, but reduced knee extension and flexion for the left knee, with normal stability, strength and tone. *Id. See also* R. 10, PageID #: 367-370 (manual muscle testing).

Dr. Bradford indicated McGill displayed appropriate judgment and insight, was oriented to person, place, and time, had normal recent and remote memory, and appropriate mood and affect. (R. 10, PageID #: 373.) Dr. Bradford's physical assessment was that McGill has degenerative joint disease of the left knee, but does not appear to be at risk for falling. *Id.* at 374. Dr. Bradford opined that McGill probably should not walk or stand for more than 15 minutes at one time. *Id.*

Stephen Sutherland, M.D., completed a Physical RFC Assessment on February 12, 2014. (R. 10, PageID #: 161, 170-171.) Dr. Sutherland found that McGill can perform a range of light work, with the ability to stand, walk, or sit for about six hours of an eight hour workday. *Id.* at 170. Exertional limitations were limited, due to chronic knee pain and obesity. Push/pull and operation of pedals was limited to frequently, bilaterally. *Id.* McGill was limited to frequent climbing of ramps or stairs, frequent balancing or crouching, and occasional climbing of ladders, ropes, or scaffolds, and occasional kneeling or crawling. *Id.* at 171.

On August 14, 2015, treating physician Sonji Boyd, M.D., completed a medical source statement of ability to do physical work-related activities. (R. 10, PageID #: 723-727.) Dr. Boyd found that the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. *Id.* at 723. The doctor indicated that McGill could use his hands occasionally for reaching, pushing or pulling, and frequently for handling, fingering, or feeling. *Id.* at 724. Dr. Boyd noted that McGill has chronic shoulder and arm pain in both arms. *Id.* Dr. Boyd also indicated that McGill has chronic severe knee pain in both knees, cannot operate foot controls with either foot, and limited him to occasional climbing of stairs and ramps. *Id.* at 724-725. He can never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. *Id.* at 725.

6

Dr. Boyd opined that McGill can occasionally operate a motor vehicle, and be exposed to humidity and wetness, as well as dust, odors, fumes, and pulmonary irritants, but he can never be exposed to unprotected heights, moving mechanical parts, extreme cold or heat, or vibrations. (R. 10, PageID #: 726.) The doctor also indicated that McGill could not walk up to a block at a reasonable pace on rough or uneven surfaces, and could not use standard public transportation. *Id.* at 727. The doctor noted that McGill passed a manual dexterity test, and his severe knee pain prevents excessive walking and climbing stairs. *Id.* Dr. Boyd indicated that these limitations were first present on January 13, 2001. *Id.*

IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her September 24, 2015, decision:

> 1. The claimant has not engaged in substantial gainful activity since July 24, 2013, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: cervical spondylosis with degenerative disc disease of the cervical spine, osteoarthritis of the knees, obesity, diabetes mellitus, major depressive disorder, and generalized anxiety disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to frequent use of foot pedals and frequent push/pull with the lower extremities bilaterally, can occasionally climb ladders, ropes, and scaffolds, can occasionally kneel and crawl, can frequently climb ramps and stairs, can frequently balance and crouch, is limited in stooping and with respect to his mental impairments, he has no memory limitations, is

limited to routine type work, is limited to superficial interactions with others and is defined as speaking or signaling to accept instructions, carry out instructions, serve and ask questions but no colloboration, mentoring or persuading, however, telephone contact is acceptable.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on August 31, 1961, and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since July 24, 2013, the date the application was filed (20 CFR 416.920(g)).

(R. 10, PageID #: 69-70, 73, 76-78.)


## V.  DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health &*

*Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich. Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

VII.  ANALYSIS

A.  Plaintiff's Symptoms

McGill argues that the ALJ failed to properly evaluate his complaints of disabling symptoms, although he does not identify exactly which portion of the opinion he contends is objectionable. (R. 12, PageID #: 746, 756-57.) According to McGill, a cause of his disability is the symptoms of pain associated with his medical conditions, rather than the actual condition(s). *Id.* at 756. He asserts that the ALJ failed to properly evaluate his symptoms. *Id.* The

Commissioner responds that Plaintiff's argument fails whether considered as a Step Two challenge or a challenge to the ALJ's RFC determination. (R. 14, PageID # 814-16.)

The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when symptoms of pain (and not the underlying condition itself) form a basis of the claimant's disability claim. *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007). First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* (*citing* 20 C.F.R. § 416.929(a)). If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.*

If the ALJ determines that the claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must determine the claimant's credibility based on a consideration of the entire case record. *Rogers*, 486 F.3d at 247. The ALJ is not permitted to make credibility determinations based solely upon intangible or intuitive notions about an individual's credibility, but rather the ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record." *Rogers*, 486 F.3d at 247-248. In other words, the ALJ's assessment of the claimant's credibility must be supported by substantial evidence. SSR 96-7p also requires that the ALJ explain the credibility determinations in the decision and it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248. To the extent that the ALJ's findings are based on the credibility of the claimant,

those findings are accorded great weight and deference. *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008).

The Sixth Circuit has stated that "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Secretary, HHS*, 801 F.2d 847, 852-853 (6th Cir. 1986). The ALJ considers a number of factors that may or may not corroborate the claimant's allegations of pain, including: the claimant's daily activities; the frequency and intensity of the pain or other symptoms; the effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; and treatment, other than medication, the individual has received for relief of pain or other symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1038 (1994) (citing 20 C.F.R. § 404.1529); *see also* Social Security Ruling 96-7p, 1996 WL 374186; 20 C.F.R. § 416.929.

Here, the ALJ's September 24, 2015 decision set forth the proper two-step process discussed above for considering the claimant's symptoms. (R. 10, PageID #: 73.) The ALJ noted that McGill alleged he was disabled by pain symptoms, specifically knee pain. *Id.* The ALJ reviewed the medical treatment records relating to McGill's left knee, noting that he had two arthroscopic surgeries in 2001 and 2005, but that recent x-rays on November 1, 2013, did not demonstrate bone, joint, or soft tissue abnormality, and showed no fracture. *Id.* at 73-74. In addition, recent exams evidence some tenderness, but also demonstrate normal muscle strength, sensation, and reflexes. *Id.* at 74. The ALJ further considered McGill's complaints of neck pain, and summarized the associated medical treatment and exam records. *Id.* The ALJ concluded that McGill had received conservative treatment that included prescribed medications for his complaints of pain. *Id.*

The ALJ determined, "after careful consideration of the evidence," that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 10, PageID #: 74.). But the ALJ further concluded the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. *Id*. The ALJ's decision fully considered Plaintiff's allegations of pain in light of the objective medical evidence and other evidence in the record, then buttressed the decision with the credibility analysis finding Plaintiff's symptoms not entirely credible.

McGill argues that the ALJ failed to consider multiple pain disorders, such as chronic pain syndrome, myalgias and myositis, and left flank and abdominal pain, when evaluating his complaints of pain. (R. 12, PageID #: 757-759.) McGill contends that the ALJ's decision was silent regarding these impairments and their impact on his functional limitations. *Id.* at 758. While McGill concedes that this failure was not a Step 2 violation, he argues the failure to consider the impact of his symptoms violated the ALJ's duty to evaluate symptoms and credibility. *Id.* McGill claims, without case authority in support, that the ALJ's alleged failure to follow the mandates of SSR 96-7p means that her findings were not supported by substantial evidence. *Id.* at 759.

McGill, however, did not identify these specific pain disorders among the conditions that he claimed limited his ability to work. (R. 14, PageID #: 815, citing R. 10, PageID #: 242.) In addition, McGill fails to identify a physician's opinion stating that chronic pain syndrome, myalgias and myositis, or left flank and abdominal pain were severe impairments. (R. 12, PageID #: 758-759; *see e.g.* R. 10, PageID # 736-41 (Dr. Boyd's medical source statement)). Because the ALJ found a number of severe impairments at Step Two of the analysis, but did not

reference these specific conditions, the ALJ implicitly determined that such conditions were not severe impairments. Moreover, the ALJ did not deny the claim for benefits at Step Two. Rather, the ALJ determined that McGill had the severe impairments of cervical spondylosis with degenerative disc disease of the cervical spine, osteoarthritis of the knees, obesity, diabetes mellitus, major depressive disorder, and generalized anxiety disorder, and continued with the remaining steps of the disability analysis. (R. 10, PageID #: 69.)

Once the ALJ determines that a claimant has at least one severe impairment, the ALJ then considers all impairments, severe and non-severe, in the remaining steps. *Pompa v. Commissioner*, No. 02-2335, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003). Moreover, it does not constitute reversible error if an ALJ fails to find an impairment severe, when the ALJ finds a severe impairment and continues with the remaining steps of the disability evaluation. *Winn v. Commissioner*, No. 14-3499, 2015 WL 3702032, at *10 (6th Cir. June 15, 2015) (citing *Maziarz v. Secretary, HHS*, 837 F.2d 240, 244 (6th Cir. 1987)); *Fisk v. Astrue*, No. 06-4677, 2007 WL 3325869, at *4 (6th Cir. Nov. 9, 2007). Because the ALJ found that McGill had a severe impairment at Step Two, "whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa*, 2003 WL 21949797, at *1.

Further, the ALJ is not required to address every piece of evidence in the record in reaching the decision. *See Kornecky v. Commissioner*, No. 04-2171, 2006 WL 305648, at *10 (6th Cir. Feb. 9, 2006) (per curiam); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *Rowland v. Commissioner*, No. 2:16CV481, 2017 WL 1190541, at *6 (S.D. Ohio Mar. 31, 2017), adopted by 2017 WL 2644210 (S.D. Ohio June 19, 2017); *Smith v. Commissioner*, No. CIV. 4:09CV80, 2010 WL 1640271, at *3 (E.D. Va. Apr. 22, 2010) (citing SSR 06-3p). Indeed,

an ALJ must show only that she considered the record as a whole.  *See Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1999); *see generally Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (where ALJ indicates she has considered all the evidence, courts take ALJ at her word).

The ALJ's decision considered all of claimant's impairments, including his non-severe impairments, when assessing his residual functional capacity.  (R. 10, PageID #: 73-76; *see generally Fisk*, 2007 WL 3325869, at *4; *Maziarz*, 837 F.2d at 244.)  As indicated above, the ALJ rendered findings of fact and conclusions of law "after careful consideration of the evidence" (R. 10, PageID # 69), and the decision "considered all symptoms."  (Id. at 73.)  The ALJ identified a number of severe impairments—including cervical spondylosis with degenerative disc disease of the cervical spine, osteoarthritis of the knees, major depressive disorder, and generalized anxiety disorder—along with Plaintiff's corresponding "pain and other symptoms" to determine the RFC.  (R. 10, PageID # 73-76.)  Plaintiff has not identified any additional limitations that are not already addressed by the ALJ's RFC determination.

## B.  Fibromyalgia

McGill also contends that the ALJ failed to comply with SSR 12-2p when evaluating fibromyalgia.  (R. 12, PageID #: 759-760.)  He argues that he had multiple trigger points, and the ALJ should have taken additional steps to determine whether he had the requisite number of trigger points for fibromyalgia to quality as a medically determinable impairment.  *Id.*

A diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits. *Stankoski v. Astrue*, No. 12-4227, 2013 WL 4045974, at *4 (6th Cir. Aug. 12, 2013)

(citing *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *4 (6th Cir. Jan. 15, 2008)).

Social Security Ruling 12-2p sets forth guidelines under which an ALJ may find fibromyalgia to be a medically determinable impairment. *Luukkonen v. Commissioner*, No. 15-1561, 2016 WL 3426370, at *4-*5 (6th Cir. June 22, 2016). Under SSR 12-2p, a person has fibromyalgia if: (1) there is a history of widespread pain, in all quadrants of the body, that has persisted for at least 3 months (the pain may fluctuate in intensity and may not always be present); (2) at least 11 of 18 possible positive tender points are found on physical examination; and (3) there is evidence that other disorders were excluded as possible causes of the pain. SSR 12-2p, 2012 WL 3104869, at *2-*3.

SSR 12-2p also makes provision to enable the ALJ, in her discretion, to take additional steps when the ALJ has insufficient evidence to consider whether fibromyalgia is a medically determinable impairment for the claimant. (R. 12, PageID #: 759-760, quoting SSR 12-2p.) Here, the ALJ did not find there was insufficient evidence to proceed. Rather, the ALJ evaluated the evidence in the record before her and determined that:

> . . . physical examinations in the record have not documented at least 11 tender points and while the claimant does have evidence of fatigue, depression and anxiety, his treatment records do not indicate repeated manifestations of six or more fibromyalgia symptoms including cognitive or memory problems, waking unrefreshed or irritable bowel syndrome. Therefore, claimant's fibromyalgia does not meet the criteria of Social Security Ruling 12-2p and is not a medically determinable impairment.

(R. 10, PageID #: 70, citation to record omitted.)

In social security disability cases, the burden lies with the claimant to prove by sufficient evidence that he is disabled. *Ferguson v. Commissioner*, 628 F.3d 269, 275 (6th Cir. 2010); *Nabours v. Commissioner*, No. 01-6464, 2002 WL 31473794, at *3 (6th Cir. Nov. 4, 2002); *see*

*also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Only under special circumstances, for example, when a claimant is without counsel, does an ALJ have a special, heightened duty to develop the record. *Nabours*, 2002 WL 31473794, at *3 (citing *Duncan*, 801 F.2d at 856). The court finds no error in the ALJ's decision to rely on the evidence provided by the claimant in making her determination concerning fibromyalgia.


## C.  Credibility

McGill challenges the ALJ's credibility determination by first arguing the ALJ failed to fully consider the combined impact that physical and mental disorders had on his pain. (R. 12, PageID #: 760-761, citing *Lester v. Chater*, 81 F.3d 821, 829-830 (9th Cir. 1995).) Although McGill recognized that the ALJ stated she considered the impairments in combination, McGill claims that she discounted the severity of his pain, and considered his medical conditions in a vacuum. (R. 12, PageID #: 761, citing R. 10, PageID #: 70-71. McGill contends that chronic pain syndrome will have a greater impact on his pain and functioning when it is coupled with depression. (R. 12, PageID #:761, citing *Bates v. Apfel*, 69 F. Supp. 2d 1143, 1150 (N.D. Iowa 1999).) McGill asserts that the ALJ's decision was not supported by substantial evidence because "the ALJ failed to consider the link between depression and pain" when evaluating his credibility. *Id*.[3] The Commissioner responded that the ALJ's decision was not required specifically to consider an "intrinsic link" as Plaintiff suggests, but rather it considered Plaintiff's

---

[3] McGill provides no case authority from the Sixth Circuit supporting a requirement that an ALJ's decision must address an "intrinsic link" between pain and depression. In any event, the ALJ's decision sufficiently considered McGill's symptoms and impairments in combination, as discussed herein and R. 10.

depression along with his physical complaints and sufficiently assessed his impairments in combination. (R. 14, PageID # 816.)

The ALJ has the responsibility for reviewing all the evidence in making her determinations. 20 C.F.R. § 416.927(e)(2). In formulating the RFC, the ALJ determines the most the claimant can do, despite the limitations caused by the claimant's physical and mental impairments. 20 C.F.R. § 416.945(a)(1). Discretion is "vested in the ALJ to weigh all the evidence." *Collins v. Commissioner*, No. 08-6473, 2009 WL 4906907, at *5 (6th Cir. Dec. 18, 2009) (quoting *Bradley v. Secretary, HHS*, 862 F.2d 1224, 1227 (6th Cir. 1988)). The ALJ's decision here reflects that the ALJ properly considered McGill's depression as well as his physical complaints. *See, e.g.* R. 10, PageID #: 70 (evidence of physical impairments and depression), 71 (diagnosed with major depression; consideration of daily activities), 72 (work pressures may increase depression), 73-75 (consideration of physical and mental impairments), 74 (diagnosed with major depression). The ALJ had no obligation to further discuss an "intrinsic link" between McGill's pain and his depression. The court finds no error.

McGill also contends that the ALJ's rationale for finding him not credible lacks substantial evidence. (R. 12, PageID #: 761-763.) McGill claims that the ALJ mischaracterized the evidence in finding his statements concerning the intensity, persistence and limiting effects of his symptoms to be not entirely credible. *Id.* at 763. For example, the ALJ noted that claimant alleges he has been disabled since July 1, 2013, yet McGill was planning to go on a missionary trip to Africa in 2014. (R. 10, PageID #: 75.) Although the trip was postponed, the ALJ stated "the records do not indicate that he postponed the trip due to his disability." *Id.* McGill argues that the trip never got beyond the planning stages. (R. 12, PageID #: 762.) The point, of course,

18

is not whether claimant actually took the trip or not, rather, it is that claimant apparently did not

consider himself too disabled to undertake such a journey.

Further, the ALJ supported her reasoning with evidence in the record.  (R. 10, PageID #:

75, citing PageID #: 536, 548.)  At the cited June 25, 2014, appointment with his therapist, the

therapist related that McGill "has been throwing himself into his ministry and missionary work.

He states he is preparing to return to Africa for a 2 week missionary trip in August, which the

leadership of the church has raised funds to help him to realize."  (R. 10, PageID #: 536.)  At the

cited August 6, 2014, visit, the therapist reported:

> Pt states he has postponed his mission trip to Africa due to heightened fears for air
> safety after the recent downing of commercial aircraft, in addition to the Ebola
> outbreak and general civil unrest.  Pt states he is "eager" to return to West Africa
> and does not have the same intense concerns about his safety that his family does.
> Pt states he is going to take all precautions and consult with his PCP prior to
> making any further travel plans.  Pt states part of the delay is financial as the
> pledged monetary support from the members of the church did not come through.
> * * * * * Pt states he knows he will be able to go when the time is right, and
> anticipates a late September or early October departure.

(R. 10, PageID #: 548.)  By contrast, at the August 2015 hearing, the ALJ inquired as to the

nature of McGill's missionary work, and McGill testified that it was more in the nature of online

correspondence and fundraising for the needs of some groups there.  (R. 10, PageID #: 99-105.)

The ALJ asked, "You're not actively going with your church to Africa?" and McGill responded,

"Oh, no.  No, no." *Id.* at 102.

Another example contested by McGill is the ALJ's statement that "the evidence indicates

that the claimant stopped working because he retired, not because he was disabled."  (R. 12,

PageID #: 763; R. 10, PageID #: 75, citing PageID #: 495.)  The ALJ cited to a February 26,

2014, therapy visit at which McGill referred to "the fact he was no longer able to provide

physically and financially in the same manner he did prior to retiring." (R. 10, PageID #: 495.)

McGill argues that this statement was taken out of context, and that "an earlier sentence actually referenced his work injury as the reason he stopped working." (R. 12, PageID #: 763.) Although plaintiff is correct that the therapist's note recited McGill mentioned "a work related injury," there is no assertion that the injury was the reason he stopped working. (R. 10, PageID #: 495.) The court does not re-weigh the evidence, but notes that the ALJ's reading of the therapist's record was fair as the reference to the work injury was in the context of the cause of his pain, not mentioned as the reason he was not working or decided to retire. *Id.*

The ALJ's findings based on the credibility of the claimant are accorded great deference. *Walters*, 127 F.3d at 531; *Gonzalez*, 2008 WL 584927, at *5. The court finds that the ALJ's contested credibility determinations are reasonable, specific, and supported by substantial evidence. The ALJ identified specific facts supported by the record which cast doubt on the severity of the disabilities as alleged by McGill. Because "a reasonable mind might accept [the evidence] as adequate to support" his credibility determination, the court concludes that substantial evidence supports the ALJ's finding. *Norris v. Commissioner*, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing *Rogers*, 486 F.3d at 241).


## D.  Treating Physician:  Dr. Boyd

McGill alleges that the ALJ committed legal error when evaluating the treating physician's opinion and failed to determine whether the treating physician's opinions were well-supported by medically acceptable clinical and laboratory diagnostic techniques. (R. 12, PageID #: 763-767.) The undersigned does not agree with Plaintiff's argument.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[4] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance*, 2008 WL 162942, at *3 (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating

---

[4]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

physician's opinion, and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581

F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009)

(quoting SSR 96-2p).  The obligation to provide good reasons permits meaningful and efficient

review of the ALJ's application of the treating physician rule. *Cole v. Astrue*, 661 F.3d 931, 938

(6th Cir. 2011).

The ALJ's decision identified Dr. Boyd as a treating physical whose opinion was not

entitled to controlling weight.  In particular, the ALJ stated:

> Some weight is also given to the medical source statement completed by the
> claimant's treating physician, Sonji Boyd, M.D., dated August 14, 2015 (Exhibit
> C12F).  Dr. Boyd was not given controlling weight because even though she
> found that the claimant can lift up to 20 pounds occasionally and 10 pounds
> frequently which is consistent with the objective evidence in the record, she also
> indicated that the claimant has limitations with the upper extremities, can never
> operate foot controls and can never balance, stoop, kneel, crouch or crawl, and
> never work in extreme cold, heat or vibration and such limitations are not
> supported by evidence in the record, including Dr. Boyd's own treatment records
> which note tenderness but stable pain, normal knee x-rays, and good to normal
> muscle strength (Exhibit C12F).

(R. 10, PageID #: 75-76.)

McGill contends that the ALJ failed to conduct a proper analysis of the first prong of the

treating physician rule because she failed to determine whether the opinion was well-supported,

and not inconsistent with other substantial evidence in the case record.  (R. 12, PageID #: 764.)

Simply put, McGill asserts that the ALJ "skipped the first prong" of the rule.  *Id.*  The ALJ

explicitly stated that she was not according Dr. Boyd's opinion controlling weight; and, although

the ALJ's decision could have elaborated further, it explained why she made that determination,

because multiple limitations identified by Dr. Boyd were not supported by evidence in the

record, including the doctor's own medical records, objective observations, and pertinent x-rays

showing a normal knee.  (R. 10, PageID #: 75-76.)  The court does not find any impropriety in the ALJ's decision on the first prong of the treating physician analysis.

In addition, McGill argues that the ALJ failed to provide good reasons for not according controlling weight, or great deference, to Dr. Boyd's opinion.  (R. 12, PageID #: 765.)  Although McGill implicitly recognizes that the ALJ provided reasons for not giving Dr. Boyd controlling weight, McGill contends that the reasons failed to meet the "good reasons" standard.  *Id.*  McGill further asserts the ALJ erred by not giving controlling weight to Dr. Boyd because, for example, "Dr. Boyd was aware of all of Mr. McGill's medical disorders including those ignored by the ALJ."  *Id.*  McGill asserts that the ALJ "could not make a proper evaluation of the treating doctor's opinion since she only considered some but not all of Mr. McGill's chronic disorders."  *Id.* at 766.

Good reasons for not giving a treating physician's opinion controlling weight must be supported by evidence in the record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the opinion, and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning*, 661 F.Supp.2d at 818-819.  In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion.  *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).  While McGill disagrees with the ALJ's reasoning, the specific reasons why the ALJ assessed Dr. Boyd's opinion "some weight," rather than controlling weight, are set forth in the decision.  (R. 10, PageID #: 75-76.)  Moreover, the decision discussed the evidence in the record concerning the physical and psychological conditions that McGill had stated limited his ability to work.  (R. 10, PageID #: 69-76.)  In

addition, the ALJ recognized the nature of the treatment relationship, § 416.927(c)(2)(ii); and

discussed the supportability and consistency of Dr. Boyd's opinion, § 416.927(c)(3),(4).  The

ALJ's decision must stand if supported by substantial evidence, regardless of whether substantial

evidence also supports the opposite conclusion.  *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.


## E. New Evidence

Finally, McGill argues that new evidence material to the determination of his disability

requires a remand to evaluate the nature and severity of his impairments.  (R. 12, PageID #: 767-

768.)  McGill claims that a missing Functional Capacity Evaluation is "relevant evidence of Mr.

McGill's difficulties of being on his feet and postural limitations."  *Id.* at 768; *see generally* R.

10, PageID #: 732-735.

The standard for determining whether to remand a claim for consideration of additional

information is set forth in the governing statute:

> The court ... may at any time order additional evidence to be taken before the
> Secretary, but only upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such evidence into the
> record in a prior proceeding....

*Sizemore v. Secretary, HHS*, 865 F.2d 709, 711 (6th Cir. 1988) (quoting "sentence six" of 42

U.S.C.A. § 405(g)).  The Sixth Circuit indicated that "this provision was enacted, at least in part,

to limit the discretion of federal judges to remand for reconsideration of new evidence."  *Willis v.*

*Secretary,  HHS*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam) (citing cases).  It is well

established that the party seeking remand bears the burden of showing that a remand is proper.

*Hollon v. Commissioner*, 447 F.3d 477, 483 (6th Cir. 2006); *Sizemore*, 865 F.2d at 711; *Oliver v.*

*Secretary, HHS*, 804 F.2d 964, 966 (6th Cir. 1986) (citing *Willis*).

To justify a "sentence six" remand, a claimant must present (1) new evidence that is (2) material to the disposition of his administrative case, and (3) show good cause for his failure to produce this evidence during the earlier proceedings. *Hollon*, 447 F.3d at 483; *McCarty v. Commissioner*, 61 F.3d 903, 1995 WL 445728, at *3 (6th Cir. 1995) (TABLE, text in WESTLAW) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)); *Sizemore*, 865 F.2d at 711-712.

McGill asserts that the Cleveland Clinic performed a Functional Capacity Evaluation ("FCE"), which was referenced in the record but was not available at the time of the hearing. (R. 10, PageID #: 767.) McGill states that:

> The ALJ was notified that there was a delay in the processing of the requested evaluation (TR. 672) and counsel discussed the problem with the ALJ (TR. 32, 71-72). The ALJ felt the full report was essential evidence and said she would keep the file open for its receipt (32, 71-72).

(R. 10, PageID #: 767.) The hearing transcript reflects a discussion of some missing records from NEON and University Hospitals, including, possibly, NEON records which refer to a functional capacity assessment. (R. 10, PageID #: 85-86.) There is no specific discussion of "a delay in the processing of the requested evaluation," nor does the cited portion of the transcript indicate that the ALJ "felt the full report was essential evidence," or that she would specifically keep the record open for the receipt of a Functional Capacity Evaluation performed by the Cleveland Clinic. (R. 10, PageID #: 88, 127-128. ("TR. 32, 71-72").)

In any event, the Commissioner does not challenge the "new" or "good cause" elements, but argues that McGill fails to show how the evidence at issue is "material." (R. 14, PageID #: 825.) Evidence in this context is deemed "material" if there is a reasonable probability that the ALJ would have reached a different disposition of the disability claim had the new evidence

been presented during the  administrative proceedings.  *Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483; *McCarty*, 1995 WL 445728, at *3; *Sizemore*, 865 F.2d at 711.  Further, case law indicates that "evidence is 'material' when it is relevant and probative." *Johnson v. Heckler*, 765 F.2d 145, 1985 WL 13306 (6th Cir. 1985) (per curiam)  (TABLE, text in WESTLAW) (citing cases); *see also Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981); *Smith v. Commissioner*, No. 2:10CV58, 2010 WL 6303884, at *7 (S.D. Ohio Nov. 24, 2010), *adopted by* 2011 WL 1125031 (S.D. Ohio Mar. 24, 2011), *aff'd*, No. 11-3456, 2012 WL 1071805 (6th Cir. Apr. 2, 2012).

McGill asserts that the missing FCE would be "relevant evidence of Mr. McGill's difficulties of being on his feet and postural limitations."  (R. 12, PageID #: 768.)  The Commissioner notes that McGill makes no argument about how the report would have affected the assessment of the severity of his symptoms, or would have imposed additional limitations on his ability to perform work.  (R. 14, PageID #: 825.)  McGill has not identified material evidence in the FCE that would demonstrate a reasonable probability that the ALJ would have reached a different disposition of the disability claim had that evidence been presented during the administrative proceedings.  *Id.*  The Commissioner, by contrast, indicates that the FCE report concludes that McGill is capable of light work, which is "precisely what the ALJ found."  (R. 14, PageID #: 825, citing R. 10, PageID #: 734, 73.)

The court finds that McGill has not carried his burden of showing that new evidence is material to the disposition of his administrative case such that it requires remand.  *Hollon*, 447 F.3d at 483; *Sizemore*, 865 F.2d at 711; *Oliver*, 804 F.2d at 966.  The case should not be remanded on this basis.

## VIII. CONCLUSION

The undersigned recommends that the Commissioner's final decision be affirmed

because the ALJ's decision was supported by substantial evidence as set forth herein.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:  December 13, 2017

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).